Aaron M. Waite, Esq.
Utah Bar No. 8992
R. Samuel Ehlers, Esq.
Utah Bar No. 10928
THE COOPER CASTLE LAW FIRM
A Multi-Jurisdictional Law Firm
678 Vine Street, Unit 10
Murray, UT 84107
(801) 302-5486/(801) 263-7856 (facsimile)
Loan No. xxxx7861/ Our File No. 10-04-5023-UT
Attorney for Secured Creditor
Washington Mutual Bank, FSB and any successors and/or assigns, Green Tree Servicing, LLC as Servicer

**ECF FILED ON:**

APR 21 2010

UNITED STATES BANKRUPTCY COURT
DISTRICT OF UTAH

| In re:<br>KENNETH ALAN RALPHS<br>CAMILLE C. RALPHS<br>Debtor(s) | CHAPTER 7<br>BANKRUPTCY NO.: 10-20934-RKM<br>DATE: May 19, 2010<br>TIME: 10:00 AM<br>RE: 1973 SKYLINE  D17<br>VIN: 019412G |
|---|---|

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

| TO: | KENNETH ALAN RALPHS AND CAMILLE C. RALPHS, DEBTOR(S) |
|---|---|
| TO: | JACOB R. POWELL, ESQ., ATTORNEY FOR THE DEBTOR(S) |
| TO: | PHILLIP G. JONES TR., CHAPTER 7 TRUSTEE |
| TO: | ALL INTERESTED PARTIES |
| TO: | THE CLERK OF THE ABOVE-ENTITLED COURT |

Secured Creditor, Washington Mutual Bank, FSB and any successors and/or assigns, Green Tree Servicing, LLC as Servicer, hereby moves this Honorable Court for an order terminating the automatic stay to allow Washington Mutual Bank, FSB and any successors and/or assigns, Green Tree Servicing, LLC as Servicer to proceed with and complete any and all contractual and statutory remedies available pertaining to Washington Mutual Bank, FSB and any successors and/or assigns, Green Tree Servicing, LLC as Servicer 's security interest held in the property 1973 SKYLINE  D17 VIN: 019412G (Mobile Home).

## FACTS

1.    On or about August 11, 1997, a loan was originated on the property 1973 SKYLINE D17 VIN: 019412G, secured and encumbered by a Retail Installment Contract and Security Agreement, which is in favor of Washington Mutual Bank, FSB and any successors and/or assigns,

- 1 -

Green Tree Servicing, LLC, as Servicer. A copy of the Retail Installment Contract and Security Agreement and Certificate of Title are attached hereto as Exhibit "A".

2. The principal balance under the Retail Installment Contract and Security Agreement at the time of this motion is approximately $9,238.09.

3. The regular monthly payment under the note is due on the eleventh (11th) day of each month and the amount required is $122.92. A late fee applies for each and every payment, which is not received timely. Interest accrues at the rate of 11.7500%.

4. Debtor(s) filed their voluntary Chapter 7 on January 29, 2010.

5. The current arrearages as defined in the Retail Installment Contract and Security Agreement and the Bankruptcy Code are:

| | |
|---|---|
| 2 monthly payments at $122.92 | $245.84 |
| March 11, 2010 through April 11, 2010 | |
| Accrued Late Charges | $6.14 |
| Attorneys Fee | $400.00 |
| Filing Fee | $150.00 |
| Total Arrearages | $801.98 |

6. Please note that at time of issuance of this document the May 11, 2010 payment was not due and payable but at time of expiration it will be and **has not** been included in the amount quoted and Debtor remains responsible for this amount.

7. The total amount of arrearages is $801.98. This amount plus the principal balance $9,238.09 brings the total amount due to this Secured Creditor to $10,040.07, and it demonstrates a disproportionate debt balance encumbering the real property at issue. The estimated property value is $3,186.56 as indicated in the "NADA" Appraisal Guides for the comparable model of mobile home A copy of the "NADA" Appraisal Guides is attached hereto as Exhibit "B".

-2-

8.  Debtor have little or no equity in the Property and is not necessary for an effective reorganization.

WHEREFORE, Washington Mutual Bank, FSB and any successors and/or assigns, Green Tree Servicing, LLC, as Servicer SECURED CREDITOR respectfully requests:

1. That relief from the automatic stay be granted to allow Washington Mutual Bank, FSB and any successors and/or assigns, Green Tree Servicing, LLC, as Servicer to reposses on its lien and/or use any and all other methods both contractually and statutorily to regain possessory interest and title to the subject property under the note and Retail Installment Contract and Security Agreement referenced herein and attached hereto;

2. Award reasonable attorneys fees and costs to Washington Mutual Bank, FSB and any successors and/or assigns, Green Tree Servicing, LLC, as Servicer;

3. Award all other remedies that the Court may find reasonable and just.

Date: April 21, 2010

/s/ Aaron M. Waite, Esq.
Aaron M. Waite, Esq.
R. Samuel Ehlers, Esq.
THE COOPER CASTLE LAW FIRM
A Multi-Jurisdictional Law Firm
678 Vine Street, Unit 10
Murray, UT 84107

**Washington Mutual Bank fsb**

## MOBILE HOME SECURITY AGREEMENT
### UTAH USE ONLY

Today I am borrowing from you the sum of ___Eleven Thousand Eight Hundred Seventy Five And 00/100___ Dollars
($ __11,875.00__ ). This amount is called the "Loan".
The security for the Loan is a 19 __73__ __0__ x __0__ mobile home, Manufacturer __skyline__,
Model __d17__, Serial Number __019412g__, and all equipment, accessories or other property which are or in the future may become attached to it, located in it, or used or intended to be used in connection with it, together with all additions, substitutions or proceeds from any of the above. In this Agreement, all these things will be called the "Collateral".

The Collateral will be located at __441 S STATE STREET #4A__
__OREM, UTAH 84058__

☐ If this box is checked, I own the Real Property or am buying it on contract, and I have applied to cause the mobile home to become an improvement to the Real Property under Utah law.
☐ If this box is checked, I own the Real Property or am buying it on contract, but I have not applied to cause the mobile home to become an improvement to the Real Property under Utah law.

I gave you a promissory note (called the "Note" in this Agreement) for the amount I borrowed. To protect you if I do not repay the Loan or if I do not pay any of the charges connected with it, I give you a security interest in the Collateral.

**1. WARRANTIES OF BORROWER:** I understand that you are relying on my representations in this Agreement and in my loan application in deciding whether to make the Loan, and I warrant and represent to you that:
(a) Everything that I have told you in my loan application or otherwise in connection with my loan is still true and accurate as of today.
(b) I am the sole owner of the Collateral and no one other than myself has or claims a security interest in or any other legal right in the Collateral.
(c) If I am also giving you a security interest in real property by means of a deed of trust which I will also be signing today, I am the owner or contract purchaser of the Real Property, and no one else has or claims any legal right in it, except by virtue of easements, reservations and restrictions of record which are not inconsistent with the intended use of the Real Property and any existing real estate contract, mortgage or deed of trust given in good faith and for value, the existence of which has been disclosed in writing to you prior to the time I sign this Agreement.

**2. PROMISES OF BORROWER:** I promise to do the following things throughout the life of the Loan:
(a) I will keep the Collateral insured against fire and "extended coverage" perils in an amount equal to the full insurable value of the Collateral, under a "mobile homeowners policy" in form and with a company acceptable to you. I will provide you any evidence that the insurance is in effect which you require and I will see that the policies contain an endorsement which says that you will receive the proceeds of any insurance claim as long as I owe you money. You may apply any insurance proceeds you receive toward the repayment of my Loan in the same manner as other payments under the Note or, at your sole option, release the insurance proceeds to me;
(b) I will pay all taxes, assessments or other governmental charges affecting the Collateral before they become delinquent;
(c) Unless the mobile home subsequently becomes an improvement under Utah law, I will keep the mobile home properly certified under the laws of the state of Utah. I will have your name placed on the certificate of title as the only secured party, and will deliver the certificate of ownership to you as soon as I receive it, but in no event later than sixty (60) days from today. I will give you notice if I apply to cause the mobile home to become an improvement to the Real Property under Utah law, and I will not submit an application to do so unless you consent in advance;
(d) I will not do anything with the Collateral which is against the law;
(e) I will keep the Collateral in good condition and repair;
(f) I will allow you to inspect the Collateral at any reasonable time;
(g) I will keep the Collateral at the address shown above, and use the mobile home as my principal residence, unless you have given me written permission to use it for another purpose, and I will not lease the mobile home without your prior written consent;
(h) If I have given you a deed of trust on the Real Property upon which the mobile home is to be located at the time I sign this Agreement, I will permanently attach the mobile home to the Real Property;
(i) If I have not given you a deed of trust on the Real Property upon which the mobile home is to be located at the time I sign this Agreement, I will not permanently attach the mobile home to the Real Property without your prior written consent;
(j) I will not alter, modify, or renovate the Collateral without your prior written consent;
(k) I will not sell or transfer the Collateral or any of my interest in the Collateral in violation of the provisions of Section 3;
(l) If the collateral is located in a mobile home park or subdivision, I will comply with all the rules and regulations of the park and subdivision;
(m) If the Real Property upon which the mobile home is to be located is leased by me, or if it is subject to a real estate contract, mortgage or deed of trust in favor of a third party, I will comply with all of the terms of the lease, real estate contract, mortgage or deed of trust, as the case may be, and if I have given you a deed of trust on the real property as additional security for my loan, I will also comply with all of the terms of that deed of trust; and
(n) I will not create or permit any security interest, lien, or encumbrance on the Collateral or any part of the Collateral except that created by this Agreement.

**3. SALE OR TRANSFER OF COLLATERAL:** I understand that the Loan is personal to me, and agree that the Loan will become immediately due and payable in full upon any sale or other transfer of the Collateral or any interest in the Collateral including any other security interest in the Collateral. I will be in default under this Agreement if I sell or transfer the Collateral or any interest in the Collateral without paying my Loan off in full at or prior to the time of the sale or transfer.

**4. GENERAL TERMS:**
(a) If I do not pay the taxes or insurance premiums that I owe in connection with the Collateral or if I do not pay any bills for repair work or any other charges or expenses relating to the Collateral (including, but not limited to, the payments under any lease, real estate contract, mortgage or deed of trust affecting the Real Property upon which the Collateral is located) you may pay them for me. You do not have to pay them but if you do I promise to repay the amount you spend, together with interest from the date you spend the money until I repay you at the Default Rate of Interest specified in the Note. Until I repay you I will continue to be in violation of this Agreement, and the fact that you have spent this money on my behalf does not mean you are giving up any of the other rights or remedies which you may have against me on account of my default. The security interest I am giving you under this Agreement also secures repayment of any money you pay on my behalf.
(b) This Agreement contains everything you and I have agreed to. I understand that if I want you to change or waive any of these terms or conditions I have to get your agreement in writing. Furthermore, I understand that if you overlook a violation of this Agreement once, it does not mean I can violate it again. Each time I violate a condition of this Agreement you have the right to exercise any or all of your rights and remedies against me as described in this Agreement.
(c) This Agreement shall be governed by the laws of the state of Utah. If any part of this Agreement is ruled invalid or unenforceable, it will not affect the validity or enforceability of the remaining parts.

**5. DEFAULT REMEDIES:**
(a) Prompt performance is an essential part of this Agreement. I will be in default under this Agreement if any of the following things happen:
(i) I fail to pay anything I owe when it is due or do not make other payments I am required to make, such as for taxes or insurance, when they are due;
(ii) I violate any other term of this Agreement or any deed of trust which I have given you as additional security for my Loan;
(iii) You determine that something I told you on my loan application or in this Agreement was not true;
(iv) Anyone else takes the Collateral away from me under legal or governmental process; or
(v) I become insolvent or file bankruptcy or anyone else files a petition in bankruptcy against me or any other similar steps are taken by me or anyone else.
(b) Except in the case of abandonment of Collateral or other extreme circumstances you will, at least thirty (30) days prior to exercising your right under this Agreement and the Note to declare the entire unpaid balance of my Loan immediately due and payable in full and/or pursuing your other remedies under paragraph (c) below, send me a notice of default specifying the nature of my defaults and in the case of payment default, the sum of the payments in default and any applicable late charges. I will have thirty (30) days from the postmarked date of such default notice to cure the default and during this thirty (30) day period, you will not, in the absence of extreme circumstances, declare my unpaid Loan balance immediately due and payable, or pursue any of your other remedies under paragraph (c).
Notwithstanding the above, I will be entitled to only two (2) such default notices in any twelve (12) consecutive month period and if subsequent defaults occur within that twelve (12) month period, you may exercise your remedies for default immediately upon occurrence of the default and without notice to me.
(c) If I am in default you shall, subject to the applicable notice requirements, if any, set forth in paragraph (b) above, be entitled to declare the entire unpaid balance of my Loan immediately due and payable in full and exercise any and all other remedies the law allows you. These remedies include, but are not limited to, the following:
(i) You may require that I turn over the Collateral to you immediately;
(ii) You may come and get the Collateral, wherever it is, without giving me advance notice and without any court proceedings;
(iii) You may require me to bring the Collateral to any place you choose which is reasonably convenient to both of us and make the collateral available to you at that place;
(iv) You may sell or otherwise dispose of the Collateral, but only after sending me notice. I agree that if you send me notice by putting it in the mail, registered or certified, postage prepaid, addressed to me at the Address for Notices to me specified in the Note at least ten (10) days before the sale or other disposition of the Collateral you will have given me a reasonable notice;
(v) You may require me to pay, on demand, everything you spend to protect the Collateral and in taking possession of the Collateral and selling it in order to recover the money I owe you. If you have to hire a lawyer to protect your interest in the Collateral, or to get your money out of it, I will also have to pay your reasonable lawyer's fee whether or not you start a lawsuit and in trial, appellate and bankruptcy courts if you do. I will also have to pay expenses of title searches and all court costs and other collection expenses; and
(vi) If you dispose of the Collateral and after paying the expenses described above with the money you get for it there is not enough money left over to pay everything I owe you, you will be entitled to collect the rest from me personally.

DATED at __Provo__, Utah __11th__ day of __August__, __1997__.

BORROWER(S)

x _Kenneth A. Kilpack Sr_ _Carryl C. LaCbe_

1815 (1-99)  FILE COPY

**EXHIBIT "A"**

**Washington Mutual** Bank fsb

**MOBILE HOME FIXED RATE NOTE**
(UTAH USE ONLY)

Loan No. _____

$ 11,875.00  (U.S.)                                    Provo                    , Utah
                                                        08/11/97

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 11,875.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Washington Mutual Bank fsb. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount has been paid. I will pay interest at a yearly rate of 11.750 %. The interest rate I will pay may change in the event of a default as described in Section 6 of this Note.

### 3. PAYMENTS

(A) *TIME AND PLACE OF PAYMENTS*

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 11th day of each month beginning on 09/11/97. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each of these payments will be applied first to pay the interest due, then, at the Note Holder's option, to late charges and repayment of amounts, if any, which the Note Holder has advanced to pay taxes, assessments, insurance premiums, or other charges on the collateral for my loan, and finally to reduce the unpaid principal balance of my loan, provided that for purposes of assessing late charges, payments received will be deemed to be applied first to current installments.

If, on 08/11/22 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date".

I will make my monthly payments at 310 N University Ave Ste. 100 Provo UT 84601-2822; by mailing to P.O. Box C-11026, Seattle, WA. 98130; at any Washington Mutual financial center; or at a different place if required by the Note Holder.

(B) *AMOUNT OF MY MONTHLY PAYMENTS*

Each of my monthly payments will be in the amount of U.S. $ 122.92.

### 4. BORROWER'S RIGHT TO PREPAY

*I MAY PREPAY MY LOAN IN FULL OR IN PART AT ANY TIME WITHOUT PENALTY.* The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

### 5. SECURITY

To secure repayment of my loan, I am signing a Security Agreement today which grants you a security interest in a mobile home and certain other property described in the Security Agreement. The Security Agreement, and any deed of trust which I may have given you as additional security for repayment of my loan, are called the "Security Documents".

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) *LATE CHARGE FOR OVERDUE PAYMENTS*

If the Note Holder has not received the full amount of any of my monthly payments (except the final payment) by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be five percent (5%) of the unpaid portion of the payment. I will pay this late charge promptly but only once on each late payment.

(B) *DEFAULT*

If I do not pay the full amount of each monthly payment on the date it is due, or if I violate the terms of any of the Security Documents, I will be in default.

(C) *REMEDIES*

If I am in default, you may, upon expiration of the notice period, if any, specified in the Security Documents, demand immediate payment of all past-due payments plus the remaining unpaid portion of my loan. If I am in default and you demand full payment, I promise to pay you interest on everything I then owe you, including unpaid interest, at a rate six percent (6%) per year higher than the rate which I am otherwise obligated to pay you under this Note (the "Default Rate") from the day of the default until I pay you in full.

(D) *NO WAIVER BY NOTE HOLDER*

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) *PAYMENT OF NOTE HOLDER'S COSTS AND EXPENSES*

I promise to pay the Note Holder back for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note or under any of the Security Documents will be given by delivering it or by mailing it by first class mail to me at the address for notices specified below or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I, and any other person who has obligations under this Note, waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid. At the request of any person now or hereafter liable on this Note, the Note Holder may change the terms of payment and/or release any security for this Note or any other person liable on this Note without notifying me or releasing me from responsibility on this Note.

DATED as of the day and year first above written.

BORROWER(S)                                    ADDRESS FOR NOTICES:

X _(signature)_                                 1092 N 800 W
X _(signature)_                                 OREM              UT  84057

☐ Notice: Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods and services obtained with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amount paid by the debtor hereunder.

Kenneth A Payne SR

FILE COPY                                              1825 (2-95)

## ALLONGE TO NOTE

Loan Number:

Borrower:            KENNETH A RALPHS JR
                     KENNETH A RALPHS SR

Property Address:    441 S STATE STREET #4A
                     OREM, UT  84058

Original Note Amount:   $11,875.00
Original Note Date:     08111997

### PAY TO THE ORDER OF:

Without recourse

WASHINGTON MUTUAL BANK
By: *Don R. Mace*
Name: Don R. Mace
Title: Assistant Vice President

TC-127 Rev. 6/97

**UTAH CERTIFICATE OF TITLE**

MFG HOUSING
DATE ISSUED 10/14/97
LICENSE 73194126
42679777478

VOID

Utah State Tax Commission
Motor Vehicle Division
210 N. 1950 W.
Salt Lake City, Utah 84134

73194126
WASHINGTON MUTUAL BANK
310 N UNIVERSITY AVE
PROVO UT 84601

PREVIOUS JURISDICTION BRAND

VIN-0194126
YEAR-73  MAKE-SKY

NAME AND ADDRESS OF VEHICLE OWNER

UTAH BRAND

RALPHS KENNETH A
441 S STATE ST 4A
OREM         UT

LIEN-HOLDER

WASHINGTON MUTUAL
310 N UNIVERSITY AVE
PROVO         UT

LIEN RELEASE - Signature of lien-holder

X

Title of signer         State    ZIP Code

CONTROL NO. (not title no.)
A 5173

requesting lien change    Date

ANY ALTERATION OR ERASURE VOIDS THIS TITLE



# NADA APPRAISAL GUIDES
(THIS IS NOT AN APPRAISAL FORM)

## VALUE REPORT

Date 04/20/2010

Reference Number _____   Office Location _____   Guide Edition   Jan-Apr 2010

| Year Mfg'd | Manufacturer | Trade Name | State | Region |
|---|---|---|---|---|
| 1973 | NEW RIVER HOMES | NEW RIVER | UT | MO |

SVS Quality:   Mobile ☐   Deluxe ☐   Economy ☐   Luxury ☐   Park ☐   Standard ☑   N/A ☐

Floor Areas: Single-Wide   Chart: 330

|  | Width |  | Length | Total Value |  |
|---|---|---|---|---|---|
| Main Floor Area | 12 | x | 60 | $3,186.56 | |

Floor Value   $3,186.56

Heavy Items Multiplier:   x   . N/A

1. **Base Structure Value**   $3,186.56
2. State Location Adjustment ☐   x   N/A
3. Total Guide Book Retail Value (in average condition)   $3,186.56
4. Condition Adjustment   Excellent ☐   Good ☐   Average ☐   Fair ☐   Poor ☐   N/A ☑   x   N/A
5. Condition Adjusted Value   Remaining Physical Life: N/A   $3,186.56
6. Land-Lease Community Adjustment   Unique ☐   Excellent ☐   Standard ☐   Fair ☐   Poor ☐   N/A ☑   x   N/A
7. Land-Lease Community Adjusted Value   $3,186.56
8. **Total Adjusted Value of Home**   $3,186.56

9. Total Additional Features   +   $0.00
10. Total Repairs   -   $0.00

11. **Total Adjusted (Retail) Value of Home and Optional Equipment**   $3,186.56
12. Wholesale Value   Consignment ☐   Purchase ☐   Moved For Resale ☐   N/A ☑   x N/A   N/A
13. Additional Adjustments ☐

Completed By:

Comments:

---

1004C/70B users - cost guide quality converts to: Average.
For detailed explanation, see "Construction Quality" under "Help".

---

Value Report Filename:

Copyright © 2010 NADA Appraisal Guides, Inc., All rights reserved.   Page 1 of 1



# EXHIBIT B